UNITED STATES OF AMERICA
UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MICHIGAN
NORTHERN DIVISION

———

CHARLES EDWARD FIELDS,

        Plaintiff,                        Case No. 2:14-cv-67

v.                                             Honorable Gordon J. Quist

DAN LESATZ, et al.,

        Defendants.
_____/

**OPINION**

This is a civil rights action brought by a state prisoner pursuant to 42 U.S.C. § 1983. The Court has granted Plaintiff leave to proceed *in forma pauperis*. Under the Prison Litigation Reform Act, PUB. L. NO. 104-134, 110 STAT. 1321 (1996), the Court is required to dismiss any prisoner action brought under federal law if the complaint is frivolous, malicious, fails to state a claim upon which relief can be granted, or seeks monetary relief from a defendant immune from such relief. 28 U.S.C. §§ 1915(e)(2), 1915A; 42 U.S.C. § 1997e(c). The Court must read Plaintiff's *pro se* complaint indulgently, *see Haines v. Kerner*, 404 U.S. 519, 520 (1972), and accept Plaintiff's allegations as true, unless they are clearly irrational or wholly incredible. *Denton v. Hernandez*, 504 U.S. 25, 33 (1992). Applying these standards, the Court will dismiss Plaintiff's complaint for failure to state a claim against Defendants Bauman, Gilbert, and Haynie. The Court will serve the complaint against Defendants Lesatz, Sprader, Phillipson, Denman, and Hubble.

**Discussion**

      I.        Factual allegations

Plaintiff Charles Edward Fields, a state prisoner currently confined at the Chippewa Correctional Facility (URF), filed this civil rights action pursuant to 42 U.S.C. § 1983 against Defendants Baraga Correctional Facility (AMF) Deputy Warden Dan Lesatz, Alger Correctional Facility (LMF) Deputy Warden Scott Sprader, LMF Warden Catherine Bauman, LMF Assistant Resident Unit Supervisors L Phillipson and Jill Denman, LMF Corrections Officer P. Hubble, LMF Resident Unit Manager Robin Gilbert, and Corrections Facilities Administration (CFA) Deputy Director Bradley Haynie.

In Plaintiff's complaint, he alleges that on February 25, 2012, he told Defendant Hubble that his cellmate, Prisoner Sanders, had threatened to kill him. Plaintiff was subsequently placed in temporary segregation. Prisoner Sanders believed that Plaintiff had broken his typewriter, which was worth $300, and was playing psychological games with him. On February 27, 2012, Plaintiff submitted a request to be transferred to the general population at another facility so that he would be safe from assault by Prisoner Sanders and his "G-brothers housed throughout LMF." Defendant Sprader denied Plaintiff's request for protection because of lack of verification and gave Plaintiff three choices for housing at LMF: Spruce transition unit, Cedar unit re-entry program, and staying in segregation, but receiving a misconduct report for disobeying a direct order to return to the general population. Plaintiff chose to go to Spruce unit.

On March 1, 2012, Plaintiff's cellmate, Prisoner Allen, told Plaintiff that Prisoner Sanders had sent word out to anyone who was bunking with Plaintiff that he wanted Plaintiff dead because Plaintiff owed Prisoner Sanders $300 and had a brother who was a Corrections Officer at Cotton Prison. Prisoner Allen then covered the cell window and threatened to assault Plaintiff if he

did not move out of the cell. Prisoner Allen also told Plaintiff that he had heard that some inmates at LMF who had been housed at Cotton in the past were stating that Plaintiff's brother had treated them unfairly.

Plaintiff asked for protection and was placed in temporary segregation. On March 4, 2012, Plaintiff was interviewed by Defendant Sprader, and on March 5, 2012, Plaintiff was interviewed by Defendant Lesatz. Defendants Sprader and Lesatz ultimately denied Plaintiff's request for protection, asserting that Plaintiff had not provided evidence to support his claim. Plaintiff was given a direct order to return to the general population, which Plaintiff refused. Plaintiff then received a minor misconduct for the refusal, and was eventually found guilty of the misconduct. On March 21, 2012, Plaintiff was again ordered to pack up his property for a transfer to the general population. Plaintiff refused and was given a minor misconduct, which was elevated to a major misconduct, and was found guilty of the misconduct on March 30, 2012.

On May 9, 2012, Plaintiff was ordered to pack up and move to the general population. Plaintiff complied after he learned that Prisoner Sanders had been transferred to another prison and that he would not be housed in Spruce unit. Plaintiff was transferred to Maple unit, security level IV. In July of 2012, Spruce unit was converted from security level IV to level II. On July 26, 2012, Plaintiff was transferred to level II Spruce unit and was assigned to a cell directly across from Prisoner Allen. In August, Defendant Denman asked Plaintiff if he still had security concerns. Plaintiff told Defendant Denman that Prisoner Allen knew that his brother was a Corrections Officer and had previously threatened to assault Plaintiff. Plaintiff also told Defendant Denman that Prisoner Allen had been extorting him for his desserts each day in exchange for not telling other inmates about Plaintiff's brother. Plaintiff then asked to be transferred to another

prison. Defendant Denman said that she would relate the information to Defendants Lesatz and Sprader and would work on getting Plaintiff's cell assignment changed.

On August 21, 2012, Plaintiff received a letter from Ombudsman Eric Mattson, who stated that he had been informed by staff that the prisoner that had threatened Plaintiff had been transferred to another facility and that no other prisoners at LMF knew that his brother was a Corrections Officer. In the last week of September, Plaintiff began asking Defendants Hubble and Phillipson for a transfer to a different wing because after Plaintiff stopped giving his desserts to Prisoner Allen, Prisoner Allen had responded by telling Plaintiff's cellmate Jones about his brother. Defendants Hubble and Phillipson ignored Plaintiff's complaints.

On October 2, 2012, Plaintiff asked for typing paper and carbon paper for his legal work. Defendant Phillipson refused Plaintiff's request, and he filed a grievance on her. On October 5, 2011, Prisoner Jones told Plaintiff that if he did not move out of the cell by the that evening, he was going to either butcher Plaintiff with a shank, or choke him. Plaintiff informed Defendants Hubble and Phillipson of the threat and asked to be moved. Defendants Hubble and Phillipson told Plaintiff that he could either remain in the cell with Jones, or be moved to temporary segregation for protection and that Prisoner Jones would be moved to temporary segregation for threatening behavior. On October 9, 2012, Plaintiff was interviewed by Defendant Sprader regarding the threats by Prisoner Jones. Plaintiff also told Defendant Sprader that Prisoner Jones' Bloods brother Blakely #609749 had threatened him earlier that day. Defendants Sprader and Lesatz denied Plaintiff's protection request. Plaintiff filed a grievance against Defendants Sprader and Lesatz regarding the denial. Plaintiff also filed a grievance on Defendants Phillipson and Hubble. Plaintiff was given a direct order to return to the general population in Spruce unit, where Prisoner Blakely was housed and was assigned to a cell immediately next to Prisoner Allen.

On October 13, 2012, Prisoner Williams informed Plaintiff that Defendant Hubble wanted to see him at the bubble in order to discuss moving Williams' cellmate into the cell with Plaintiff. Plaintiff stated that "it is not happening because her being quick to move inmates to relieve white inmates of stress oppose for black inmates appears to be racial." Prisoner Williams stated that he would relay the message exactly. When Plaintiff returned to his cell after law library, he noticed that someone had broken the cable outlet off his television and that it was missing along with the screw cap from his cable cord. Plaintiff informed Defendant Hubble, who stated that she would make out a stolen / damaged property report. However, later that day, Defendant Hubble wrote a misconduct report on Plaintiff for breaking his cable cord. When Plaintiff complained, Defendant Hubble stated, "I guess if you was a inmate who do not write grievances and a inmate who was white you would not have the stress of your tv and cable cord being damaged and of the damaged parts being missing." Plaintiff filed a grievance on Defendant Hubble on October 17, 2012.

On October 19, 2012, Prisoner Blakely entered Plaintiff's cell and threw a boiling oily substance on Plaintiff's face, getting some in his eyes and causing pain. Plaintiff sought medical treatment and was placed in temporary segregation. Nurse Kresser applied an eyewash for at least 20 minutes. After the eyewash, Plaintiff reported relief with some continuing irritation to his right inner eye. Plaintiff was instructed to flush his eyes as needed and to report any vision changes immediately. Two days later, Plaintiff reported that his vision had worsened and made an appointment to see the optometrist. Plaintiff's prescription for artificial tears was discontinued and Plaintiff received a new prescription for glasses.

On October 20, 2012, Plaintiff submitted a request for protective segregation. On October 23, 2012, he was interviewed on the request and explained that he was in danger of being

assaulted by the STG Bloods.  Defendant Sprader replied, "Unlike for white inmates this SCC staff rarely ever grant black inmates, especially niggers like you who like to write grievances protection requests so learn from that dead nigger Love El's situation."  When Plaintiff refused to drop his grievance, Defendant Sprader stated: "Before I allow a coon like you to be a threat to my income, I would personally see to it that your death is here at LMF by the hands of other inmates or some untraceable poison."  Plaintiff's protection request was denied and he was ordered to return to the general population.

On December 6, 2012, while he was housed in administrative segregation, Plaintiff ate spaghetti for dinner.  Within one hour, dark lines appeared on Plaintiff's fingernails and toenails.  The following few days, Plaintiff suffered severe headaches, inability to concentrate, severe fatigue, and difficulty waking.  Plaintiff began to think he had been poisoned as Defendant Sprader had threatened.  On December 7, 2012, and December 10, 2012, Plaintiff sought medical treatment.  On December 11, health care staff told Plaintiff that the lines on his nails were caused by a fungal infection.  On December 17, 2012, Plaintiff filed a grievance against Defendants Sprader, Bauman, and Gerth.  Plaintiff requested that his blood be tested for poison and lab tests were performed on December 27, 2012.  On January 16, 2013, Plaintiff was informed that his test results were within the normal range.

On December 10, 2012, Plaintiff requested a certificate of prisoner account activity in order to apply to proceed *in forma pauperis* in a federal action against Defendants Bauman, Lesatz, Maki, Lindemuth, Gerth, and Sprader, as well as Michael Martin and Gerald Riley.  On December 10, 2012, Plaintiff submitted his civil complaint to the law library in order to have copies made.  On January 7, 2013, Plaintiff submitted his revised complaint to the law library for copies to be made.  On January 9, 2013, Plaintiff gave his complaint to Assistant Resident Unit Supervisor

Salo for mailing to the court. On January 30, 2013, Plaintiff was transferred from a level II security unit at LMF, to a level V unit at the Baraga Maximum Correctional Facility. Plaintiff asserts that the increase in his security level was motivated by a desire to retaliate against him and that Defendants Denman, Lesatz, Gilbert, and Haynie were all involved in the decision to transfer Plaintiff to level V, although it does not appear that Defendants Gilbert and Haynie did anything more than sign off on the security level increase.

Plaintiff claims that Defendants' conduct violated his rights under the First, Eighth and Fourteenth Amendments. Plaintiff seeks compensatory and punitive damages, as well as declaratory and injunctive relief.

II.  Failure to state a claim

A complaint may be dismissed for failure to state a claim if it fails "'to give the defendant fair notice of what the . . . claim is and the grounds upon which it rests.'" *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)). While a complaint need not contain detailed factual allegations, a plaintiff's allegations must include more than labels and conclusions. *Twombly*, 550 U.S. at 555; *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) ("Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."). The court must determine whether the complaint contains "enough facts to state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 679. Although the plausibility standard is not equivalent to a "'probability requirement,' . . . it asks for more than a sheer possibility that a defendant has acted unlawfully." *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 556). "[W]here the well-pleaded facts do not permit the court to infer more than the

mere possibility of misconduct, the complaint has alleged – but it has not 'show[n]' – that the pleader is entitled to relief." *Iqbal*, 556 U.S. at 679 (quoting FED. R. CIV. P. 8(a)(2)); *see also Hill v. Lappin*, 630 F.3d 468, 470-71 (6th Cir. 2010) (holding that the *Twombly/Iqbal* plausibility standard applies to dismissals of prisoner cases on initial review under 28 U.S.C. §§ 1915A(b)(1) and 1915(e)(2)(B)(i)).

To state a claim under 42 U.S.C. § 1983, a plaintiff must allege the violation of a right secured by the federal Constitution or laws and must show that the deprivation was committed by a person acting under color of state law. *West v. Atkins*, 487 U.S. 42, 48 (1988); *Street v. Corr. Corp. of Am.*, 102 F.3d 810, 814 (6th Cir. 1996). Because § 1983 is a method for vindicating federal rights, not a source of substantive rights itself, the first step in an action under § 1983 is to identify the specific constitutional right allegedly infringed. *Albright v. Oliver*, 510 U.S. 266, 271 (1994).

The court notes that liability under Section 1983 must be based on more than merely the right to control employees. *Polk Co. v. Dodson*, 454 U.S. 312, 325-26 (1981); *Monell v. N.Y. City Dep't of Soc. Servs.*, 436 U.S. 658 (1978). Thus, Section 1983 liability cannot be premised upon mere allegations of *respondeat superior*. *Monell*, 436 U.S. at 691; *Polk*, 454 U.S. at 325. A party cannot be held liable under Section 1983 absent a showing that the party personally participated in, or otherwise authorized, approved or knowingly acquiesced in, the allegedly unconstitutional conduct. *See e.g. Leach v. Shelby Cnty. Sheriff*, 891 F.2d 1241, 1246 (6th Cir. 1989); *Hays v. Jefferson*, 668 F.2d 869, 874 (6th Cir. 1982). *See also Bellamy v. Bradley*, 729 F.2d 416, 421 (6th Cir. 1984).

Supervisory officials can be held liable for the acts of their subordinates only if plaintiff establishes that the supervisor failed to appropriately discharge his supervisory duties, and that this failure resulted in a denial or deprivation of plaintiff's federal rights. *See e.g. Leach*, 891

F.2d at 1246; *Hayes v. Vessey*, 777 F.2d 1149, 1154 (6th Cir. 1985). However, the failure of a supervisor to supervise, control or train the offending employee is not actionable absent a showing that the official implicitly encouraged, authorized, approved or knowingly acquiesced in, or in some other way directly participated in, the offensive conduct. *Leach*, 891 F.2d at 1246. Such a claim requires, at a minimum, that the official had knowledge of the offending employee's conduct at a time when the conduct could be prevented, or that such conduct was otherwise foreseeable or predictable. *See e.g. Gibson v. Foltz*, 963 F.2d 851, 854 (6th Cir. 1992). In addition, plaintiff must show that defendant had some duty or authority to act. *See e.g. Birrell v. Brown*, 867 F.2d 956, 959 (6th Cir. 1989) (lower level official not liable for shortcomings of building); *Ghandi v. Police Dep't of City of Detroit*, 747 F.2d 338, 351 (6th Cir. 1984) (mere presence at the scene is insufficient grounds to impose Section 1983 liability in the absence of a duty to act); *accord Hall v. Shipley*, 932 F.2d 1147 (6th Cir. 1991). In addition, merely bringing a problem to the attention of a supervisory official is not sufficient to impose such liability. *See Shelly v. Johnson*, 684 F. Supp. 941, 946 (W.D. Mich. 1987) (Hillman, C.J.), *aff'd* 849 F.2d 228 (6th Cir. 1988). Finally, supervisory liability claims cannot be based on simple negligence. *Leach*, 891 F.2d at 1246; *Weaver v. Toombs*, 756 F. Supp. 335, 337 (W.D. Mich. 1989), *aff'd* 915 F.2d 1574 (6th Cir. 1990).

Plaintiff has not alleged facts establishing that Defendants Bauman, Gilbert, and Haynie were personally involved in the activity which forms the basis of his claim. The only roles that Defendants Bauman, Gilbert, and Haynie had in this action involve the denial of administrative grievances or the failure to act. Defendants Bauman, Gilbert, and Haynie cannot be liable for such conduct under § 1983. *Shehee v. Luttrell*, 199 F.3d 295, 300 (6th Cir. 1999). Accordingly, the Court concludes that Plaintiff's claims against Defendants Bauman, Gilbert, and Haynie are properly dismissed for lack of personal involvement.

The Court notes that Plaintiff's remaining retaliation, equal protection and failure to protect claims against Defendants Lesatz, Sprader, Phillipson, Denman, and Hubble are nonfrivolous and may not be dismissed on initial review.

## Conclusion

Having conducted the review required by the Prison Litigation Reform Act, the Court determines that Defendants Bauman, Gilbert, and Haynie will be dismissed for failure to state a claim pursuant to 28 U.S.C. §§ 1915(e)(2) and 1915A(b), and 42 U.S.C. § 1997e(c). The Court will serve the complaint against Defendants Lesatz, Sprader, Phillipson, Denman, and Hubble.

An Order consistent with this Opinion will be entered.


Dated:  October 21, 2014                      /s/ Gordon J. Quist
                                              GORDON J. QUIST
                                              UNITED STATES DISTRICT JUDGE